IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BENJAMIN CUNNINGHAM, | : | |
|     Plaintiffs, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 23-CV-0534 |
| | : | |
| U.S. DEPARTMENT OF HOUSING | : | |
| AND URBAN DEVELOPMENT, *et al.*, | : | |
|     Defendants. | : | |

MEMORANDUM

**KENNEY, J.**                                                                                                                            **APRIL 14, 2023**

      Plaintiff Benjamin Cunningham filed a *pro se* complaint pursuant to 42 U.S.C. § 1983, asserting violations of the Freedom of Information Act ("FOIA") and his due process rights. The claims arise from transactions involving a home mortgage loan and the alleged refusal of Cunningham's subsequent FOIA request for related documents. Currently before the Court are Cunningham's Complaint (ECF No. 2 ("Compl.")), his Motion for Leave to Proceed *In Forma Pauperis* (ECF No. 1), and a Motion for Summary Judgment. (ECF No. 4.) Cunningham asserts claims against the United States Department of Housing and Urban Development ("HUD"), and HUD employees William Beltran, Karole A. Barker, and Mike Nixon. (Compl. at 1, 2.) He also includes John and Jane Doe Defendants.

      For the following reasons, the Court will grant Cunningham leave to proceed *in forma pauperis*. Cunningham's claims for FOIA violations asserted against the individual Defendants, and his request for money damages based on FOIA violations will be dismissed with prejudice. Cunningham's § 1983 claims will be dismissed with prejudice. To the extent Cunningham seeks to assert constitutional claims under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 392 (1971), those claims will be dismissed with prejudice.

Cunningham's FOIA claims against HUD will be dismissed without prejudice, and Cunningham will be granted leave to amend these claims. Cunningham's Motion for Summary Judgment will denied without prejudice as premature.

I.     **FACTUAL ALLEGATIONS**[1]

Cunningham asserts two distinct sets of claims. The first arise from a series of decades old transactions related to his home mortgage loan while the second arise from his recent efforts to obtain records pertaining to the old transactions. Cunningham completed the Court's non-prisoner civil rights complaint form and supplemented it with a typewritten recitation of his factual allegations. He also attached several Exhibits. (*See* Compl.)

Cunningham alleges that his FHA backed loan with Chase Manhattan Mortgage Corporation ("Chase Manhattan") fell into arrears and was in foreclosure status.[2] (*Id.* at 7.) He claims that he paid $15,000 to cure the arrearage. (*Id.*) Subsequently, Chase Manhattan allegedly removed the loan from foreclosure status but also contacted HUD's Philadelphia office and submitted a claim for payment of the insurance on the loan, claiming incorrectly that Cunningham's loan was still in foreclosure status. (*Id.*) HUD's Philadelphia office allegedly approved the claim and paid $278,000 to Chase Manhattan without Cunningham's knowledge or consent. (*Id.* at 8.)

Cunningham alleges that in 2004 Chase Manhattan sold or transferred his mortgage to American Servicing Mortgage Company ("American Servicing"). (*Id.* at 9; ECF No. 2-1 at 13-

---

[1] The allegations set forth in this Memorandum are taken from Cunningham's Complaint. (ECF No. 2.) The Court adopts the pagination supplied by the CM/ECF docketing system.

[2] The Court understands Cunningham to be referring to a loan insured by the Federal Housing Administration. *See* https://www.hud.gov/buying/loans (last accessed April 11, 2023) ("The Federal Housing Administration (FHA) - which is part of HUD – insures the loan so your lender can offer you a better deal.")

14.) American Servicing then allegedly sold or transferred Cunningham's mortgage to Wells Fargo Mortgage Company ("Wells Fargo"). (Compl. at 9.) Cunningham asserts that these transfers were illegal. (*Id.*)

Cunningham alleges that Defendants Beltran, Barker and Nixon have refused to present the facts regarding the allegedly fraudulent insurance payment obtained by Chase Manhattan to the HUD Inspector General Office on Cunningham's behalf. Cunningham also alleges that HUD's Philadelphia office has ignored his FOIA requests and refused to provide him with copies of his FHA file and has refused to permit him to appear and provide information about his loan. (*Id.* at 3, 4, 8-9.)

Cunningham attaches several Exhibits to his Complaint:

A February 10, 2004 letter from Chase Manhattan to Cunningham notifies Cunningham that his loan will be assigned for servicing to America's Servicing Company, Inc., effective March 1, 2004. (ECF No. 2-1 at 13-14.) Chase Manhattan provided the following explanation:

> As a result of your default on your mortgage loan, we made a claim for payment on the FHA mortgage insurance. In connection with that claim, we assigned your mortgage loan to FHA. FHA sold your mortgage loan to SFJV-2003-1, LLC, which is now the new owner of your mortgage loan. In connection with that sale, the servicing of your mortgage loan will be transferred, as set forth herein, to America's Servicing Company. As a result of the assignment of your mortgage loan to HUD, the payment by FHA of the FHA mortgage insurance claim and the subsequent sale and assignment of your mortgage loan to SFJV-2003-1, LLC, the FHA mortgage insurance on your mortgage loan was terminated and no further mortgage insurance premiums are due by you.

(*Id.*) A second letter of the same date from Chase Manhattan to Cunningham confirms the transfer of the servicing of the loan. (*Id.* at 15.)

A letter stamped December 8, 2021 from HUD General Deputy Assistant Secretary for Congressional and Intergovernmental Relations Sarah J. Brundage to Congressman Ritchie Torres appears to respond to a request for information made by Torres on behalf of Cunningham.

3

(*Id.* at 16-17.) Brundage relates that the subject of the letter is a payment Cunningham claims to have made to Chase Manhattan to prevent a foreclosure sale of his Bronx, New York home. (*Id.*) Brundage also notes that Defendant Dixon, identified as a member of HUD's Quality Assurance Division, had previously provided the following information regarding the loan: Cunningham's loan was reportedly sold in 2004, while the loan was six months past due. The sale of the loan triggered the payment of an assignment claim to Chase Manhattan, which then transferred the loan to the new servicer. Following payment of the assignment claim, the loan was no longer FHA insured. (*Id.*)

Cunningham also includes a December 6, 2022 e-mail from the FHA Resource Center providing instructions for obtaining documents associated with Cunningham's FHA loan, including submitting a FOIA request, and copies of a December 22, 2022 FOIA request he sent to HUD's FOIA Office. (*Id.* at 6-8.)

Cunningham also includes what appears to be confirmation that HUD received a FOIA request on December 8, 2022, that the request had been "Assigned for Processing," and that the expected delivery date of materials was January 9, 2023. (*Id.* at 5.) Also included is an e-mail exchange that took place on the same date between Cunningham and Defendant Barker, identified as a Housing Program Specialist at HUD's National Servicing Center. (*Id.* at 10-11.) Therein, Cunningham asserts his claim that Chase Manhattan fraudulently obtained an insurance payout on his mortgage loan based on a misrepresentation of the status of the loan as in foreclosure, when, according to Cunningham, he paid $15,000 to cure his alleged arrearage. (*Id.* at 10.) Barker's e-mail to Cunningham advises that, since January 2004, his loan was no longer an FHA loan. (*Id.*)

A January 19, 2023 letter from HUD's Philadelphia office advises Cunningham that his housing discrimination complaint, which the letter suggests alleged discrimination based on

4

Cunningham's status as a veteran, was received on January 6, 2023 and was closed administratively because "the information that [Cunningham] submitted to our office regarding your complaint allegations is insufficient to proceed under the law." (*Id.* at 3.) The letter is signed by Defendant Beltran, identified as Intake Branch Chief, Region III, Office of Fair Housing and Equal Opportunity. (*Id.*)

Cunningham asserts §1983 due process claims, FOIA claims, and a claim based on 813(a).[3] (*Id.* at 2.) As relief, Cunningham requests that his FOIA request be granted and that a copy of his HUD file be provided to him; rescission of the $278,000 payment to Chase Manhattan; and an award of money damages. (Id. at 4.)

## II.   STANDARD OF REVIEW

The Court will grant Cunningham leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action. Accordingly, his Complaint is subject to screening pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), and must be dismissed if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "At this early stage of the litigation,' '[the Court will] accept the facts

---

[3] Cunningham's reference is not clear, but he may be attempting to assert a claim under the Consumer Credit Protection Act, § 813(a), as amended 15 U.S.C.A. § 1692k(a)(2)(B)(i). Section 1692k(a) is found in the Fair Debt Collection Practices Act and addresses civil liability for violation of the Act. Even liberally construing Cunningham's claims, Cunningham's assertion of any claim under the Act is conclusory and he does not explain how the FDCPA is applicable to the claims asserted in the Complaint. Similarly, Cunningham makes passing reference to "discrimination." As with potential FDCPA claims, he provides no factual support for a discrimination claim. These potential claims will not be addressed further.

alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. As Cunningham is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

## III. DISCUSSION

### A. FOIA Claims

The Court understands Cunningham to be asserting FOIA claims against all of the named Defendants. Congress enacted FOIA to "facilitate public access to Government documents." *United States Dept. of State v. Ray*, 502 U.S. 164, 173 (1991) (citation omitted). "Consistent with this purpose, FOIA requires governmental agencies to make promptly available any records requested unless the requested information is exempt from disclosure under one of the nine specific exemptions set forth in the FOIA statute itself." *Davin v. United States Dept. of Justice*, 60 F.3d 1043, 1049 (3d Cir. 1995) (citation omitted). Thus, FOIA requires federal agencies to disclose, upon request, broad classes of agency records unless those records are covered by the statute's exemptions. *See* 5 U.S.C. § 552(a)(3)(A), (b) (describing agencies' obligations, procedures to be followed when seeking information under the Act and enumerating exemptions).

However, while FOIA creates disclosure obligations for federal agencies, FOIA claims may not be brought against individual federal officials or employees. *Kaplan v. Ebert*, 648 F. App'x. 177, 180 (3d Cir. 2016) (citing *Drake v. Obama*, 664 F.3d 774, 785-86 (9th Cir. 2011)

6

Accordingly, Cunningham's FOIA claims against Defendants Beltran, Barker and Nixon will be dismissed with prejudice

Additionally, money damages are not available under FOIA. *Kaplan*, 648 F. App'x. at 180 (citing *Cornucopia Inst. v. U.S. Dept. of Agric.*, 560 F.3d 673, 675 n.1 (7th Cir. 2009); *Johnson v. City of Shorewood*, 360 F.3d 810, 816 (8th Cir. 2004). Accordingly, to the extent Cunningham seeks money damages for alleged FOIA violations, those claims are dismissed with prejudice also.

This leaves Cunningham's FOIA claim against HUD seeking production of his FHA loan file for screening by the Court. With respect to this claim, Cunningham alleges that he submitted a FOIA request to HUD and requested documents from HUD's file for his FHA loan. (Compl. at 3.) He further alleges that HUD ignored his request. (*Id.*) Cunningham has not stated a plausible claim under FOIA.

"Before a plaintiff may seek relief from a district court for an executive agency's denial of a FOIA request, a plaintiff must first exhaust his administrative remedies." *Arden v. United States*, No. 13-3657, 2014 WL 2924960, at *3-4 (E.D. Pa. June 27, 2014) (dismissing FOIA claim where litigant had failed to exhaust his administrative remedies.) Further, "a plaintiff must allege in his complaint that 'he exhausted his remedies under FOIA' in order to properly plead a case. . . . [and] '[i]n the absence of such an allegation, [a plaintiff] states no claim upon which relief can be granted." *Berg v. Obama*, 574 F.Supp.2d 509, 527-28 (E.D. Pa. 2008) (quoting *Scherer v. Balkema*, 840 F.2d 437, 443 (7th Cir. 1988) and dismissing FOIA claim where plaintiff alleged that agency ignored his FOIA request but did not allege that he had exhausted his administrative remedies, or that the agency's deadline to respond to his request had expired without a response, thereby allowing the court to invoke the constructive exhaustion doctrine);

Wilbur v. CIA, 355 F.3d 675, 676 (D.C. Cir. 2004) (*per curiam*) ("Exhaustion of administrative remedies is a mandatory prerequisite to a lawsuit under FOIA.").

Cunningham's Complaint does not allege that he has exhausted available administrative remedies and does not allege that HUD failed to respond to his FOIA request as prescribed in the statute. Instead, as in *Berg*, he alleges only that HUD ignored his request. Cunningham's FOIA claim is not plausible and must be dismissed. However, he will be granted leave to amend this claim.

### B. Constitutional Claims

#### 1. Section 1983 Claims

The Court understands Cunningham to be asserting due process claims against the named Defendants based upon the payment of an allegedly fraudulent insurance claim by FHA to Chase Manhattan without Cunningham's knowledge or consent, and the Defendants' failure or refusal to disclose Chase Manhattan's allegedly fraudulent insurance claim. Cunningham asserts these claims pursuant to 42 U.S.C. § 1983, the vehicle by which federal constitutional claims may be brought in federal court. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Cunningham's constitutional claims against HUD and HUD employees asserted under § 1983 must be dismissed because § 1983 is reserved for claims against state officials and HUD is a federal agency. *Faylor v. Szupper*, 411 F. App'x. 525, 530 (3d Cir. 2011) (*per curiam*) (affirming dismissal of § 1983 claims against HUD officials because they were "acting pursuant to federal law" not state law and thus "cannot be liable under 1983"). *See also Alvarez v. HUD*, No. 22-3631, 2022 WL 5221357, at *2 n.4 (E.D. Pa. Oct. 5, 2022) (dismissing §1983 claims against HUD). Accordingly, Cunningham's § 1983 claims will be dismissed with prejudice.

8

### 2. *Bivens* Claims

To the extent Cunningham seeks to assert constitutional claims against the named Defendants, all of whom are federal actors, the basis for asserting a constitutional claim against a federal official is *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 392 (1971) (holding that a remedy is available for a federal agent's violation of a citizen's Fourth Amendment right to be free from warrantless searches and seizures); *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 70 (2001) (stating that the "purpose of *Bivens* is to deter individual federal officers from committing constitutional violations" by subjecting them to personal liability). However, the availability of *Bivens* as a cause of action is limited, and "the Supreme Court has plainly counseled against creating new *Bivens* causes of action." *Vanderklok v. United States*, 868 F.3d 189, 199 n.8 (3d Cir. 2017); *see also Hernandez v. Mesa*, 140 S. Ct. 735, 742-43 (2020) (stating that the "expansion of *Bivens* is a disfavored judicial activity," that "it is doubtful" that the outcome of *Bivens* would be the same if it were decided today, and that "for almost 40 years, [the Supreme Court] ha[s] consistently rebuffed requests to add to the claims allowed under *Bivens*." (internal quotations marks and citations omitted)).

#### a. Claims Against HUD

As an initial matter, *Bivens* claims against the United States and federal agencies are barred by sovereign immunity, absent an explicit waiver. *See Malesko,* 534 U.S. at 72; *F.D.I.C. v. Meyer,* 510 U.S. 471, 486 n. 11 (1994); *Jaffee v. United States,* 592 F.2d 712, 717 (3d Cir.1979); *Alvarez*, 2022 WL 5221357, at *2, citing *House v. Hous. & Ur. Dev.*, No. 05-3811, 2006 WL 3779762, at *6 (D.N.J. Dec. 20, 2006) ("[T]o the extent that Plaintiff seeks monetary damages from HUD and the HUD employees in their official capacities based on civil rights allegations, the claims are barred by the doctrine of sovereign immunity."). Accordingly, Cunningham's constitutional claims against HUD are dismissed with prejudice.

### b. Claims Based on 2004 Insurance Payment

To the extent Cunningham bases his constitutional claims on the 2004 payment of an insurance claim to Chase Manhattan without his knowledge or consent, he has not alleged whether or how Defendants Beltran, Barker, or Nixon participated in those events. "[A] *Bivens* claim is brought against the individual official for his or her own acts, not the acts of others." *Ziglar v. Abbasi*, 582 U.S. 120, 140 (2017). "Absent allegations that a government official had personal involvement in the alleged wrongdoing, a plaintiff fails to state a claim." *Davis v. Kennedy*, No. 19-1699, 2020 WL 5653327, at *2 (M.D. Pa. Sept. 23, 2020) (dismissing *pro se* litigant's *Bivens* claims pursuant to 28 U.S.C. § 1915(e)(2) for failure to allege personal involvement of each defendant). Accordingly, Cunningham's constitutional claims against the individual Defendants must be dismissed.[4]

---

[4] Additionally, *Bivens* claims are subject to an applicable statute of limitations. Like constitutional claims against state officials brought pursuant to 42 U.S.C. § 1983, there is no specific statute of limitations for *Bivens* claims; rather, also like claims brought under § 1983, the timeliness of a *Bivens* claim is governed by analogous state law statute of limitations governing personal injury torts. In Pennsylvania, the statute of limitations is two years. *See Kornafel v. United States Postal Serv.*, 784 F. App'x 842, 843 (3d Cir. 2019) (citing *Kach v. Hose* 589 F.3d 626, 634 (3d Cir. 2009). In New York, where Cunningham resides and where the real property that secured the loan at issue is located, *see* ECF No. 2-1 at 16-17, the applicable statute of limitations is three years. *See Doyle v. United Airlines, Inc.*, 914 F.Supp.2d 325, 334 (E.D.N.Y. 2012) (citation omitted).

Whether the statute of limitations has run turns on two issues: (1) the length of the period to commence legal action, and (2) the date on which the claim began to accrue. *Id.* In Pennsylvania, the length of the statute of limitations for a § 1983 claim is two years. *Id.*; 42 Pa. Cons. Stat. § 5524. In New York, it is three years. *Davis*, *supra*. Pennsylvania, however, employs the "discovery rule" that delays the running of the statute of limitations where "despite the exercise of reasonable diligence," a plaintiff cannot know that she is injured and by what cause. *Fine v. Checcio*, 870 A.2d 850, 858 (Pa. 2005). "A complaint is subject to dismissal for failure to state a claim on statute of limitations grounds only when the statute of limitations defense is apparent on the face of the complaint." *Wisniewski v. Fisher*, 857 F.3d 152, 157 (3d Cir. 2017).

Here, the events giving rise to Cunningham's claims based on payment of the insurance claim to Chase Manhattan occurred in or about 2004, nearly 20 years ago. *See* ECF No. 2-1 at 13-15.

### c. Claims Based on Failure or Refusal to Disclose Chase Manhattan's Allegedly Fraudulent Insurance Claim

Cunningham alleges that the individual Defendants refused to present his claim that his loan was not in foreclosure status at the time Chase Manhattan submitted an insurance claim to HUD's Inspector General. (ECF No. 2 at 10). Cunningham attaches to his Complaint a copy of an e-mail exchange between himself and Defendant Beltran in which asserts his claim that Chase Manhattan fraudulently obtained an insurance payout on his mortgage loan based on a misrepresentation of the status of the loan as in foreclosure, when, according to Cunningham, he paid $15,000 to cure his alleged arrearage. He requested that Barker report Chase Manhattan to HUD's Inspector General Office. Defendant Barker responded that his loan was no longer FHA insured and suggested that he contact his loan's current servicer. (ECF No. 2-1 at 10.)

It is not clear that Cunningham ever directly communicated with the other Defendants about this issue. Defendant Nixon is identified in a letter to Congressman Torres as having provided information regarding Cunningham's loan at some Defendant time in or about 2021, (*id.* at 16-17) but there is no allegation that Cunningham communicated directly with Nixon about his loan. Defendant Beltran signed a letter advising Cunningham that a discrimination claim submitted to HUD's Philadelphia office had been closed because the information he submitted was insufficient to proceed, but it appears from the letter that the claim arose from Cunningham's status as a veteran, not the loan at issue. (*Id.* at 2-3.)

---

While Cunningham alleges that the payment of the insurance claim giving rise to his claim occurred without his knowledge or consent, (Compl. at 3), the 2004 letter from Chase clearly states that the bank "made a claim for payment on the FHA mortgage insurance," (ECF No. 2-1 at 14), suggesting that Cunningham became aware of the payment at that time. While the Court will not dismiss Cunningham's claim on statute of limitations grounds, it appears to be an alternative basis to do so.

Although Cunningham alleges that his due process rights were violated by the Defendants' conduct, construed liberally, he may be seeking to assert a First Amendment access to courts claim based on the Defendants' alleged refusal to assist him in advancing his fraud claim.[5]  However, his single allegation as to the individual Defendants is too undeveloped to state any plausible claim.  Further, this claim would not be viable as a *Bivens* claim.  After the Supreme Court's recent guidance in *Ziglar v. Abbasi*, 137 S.Ct. 1843, 1857 (2017), courts have declined to extend *Bivens* to claims alleging denial of access to the courts.  *See Dockery v. Baltazar*, No. 20-01676, 2021 WL 2014969, at *4 & n.37 (M.D. Pa. May 19, 2021) ("To the extent that Dockery's complaint is construed to include a First Amendment denial of access to the court's claim, courts have also declined to extend *Bivens* to like First Amendment claims, finding that they present a new context, that there exists alternative remedies, and that special factors weigh against such an extension." (citing cases)).  Indeed, "the Supreme Court has never recognized a Bivens remedy under the First Amendment." *Bistrian v. Levi*, 912 F.3d 79, 95 (3d Cir. 2018).  *See also Egbert v. Boule*, 142 S. Ct. 1793, 1807 (2022) ("[T]here is no *Bivens* cause of action for [a] First Amendment retaliation claim.").  Cunningham's Bivens claims against the individual Defendants will, accordingly, be dismissed with prejudice.

---

[5] Even if Cunningham's intent was to assert a due process claim, that, too, would not state a plausible *Bivens* claim.  "In general, the Due Process Clause does not confer an affirmative right to governmental aid in order to protect individuals from private sources of harm." *See N'Jai*, 2022 WL 2508289, at *20 (citing *DeShaney v. Winnebago County Dept. of Soc. Servs.*, 489 U.S. 189, 196 (1989) and dismissing *Bivens* claim based on violation of due process rights).  Also, to the extent Cunningham seeks to pursue a *Bivens* claim based on an alleged violation of FOIA, he cannot do so.  "Federal courts have held that due process deprivations cannot be premised on an alleged FOIA violation." *N'Jai v. U.S. EPA*, No. 13-1212, 2014 WL 2508289, at *19 (W.D. Pa. June 4, 2014) (citing *Johnson v. Executive Office for U.S. Attorneys*, 310 F.3d 771, 777 (D.C. Cir. 2002) ("the comprehensiveness of FOIA precludes the creation of a *Bivens* remedy")

## IV.  CONCLUSION

For the foregoing reasons, the Court will grant Cunningham leave to proceed *in forma pauperis*.  Cunningham's claims for FOIA violations asserted against the individual Defendants, and his request for money damages based on FOIA violations will be dismissed with prejudice.  Cunningham's § 1983 claims will be dismissed with prejudice. Cunningham's *Bivens* claims will be dismissed with prejudice.  Cunningham's FOIA claims against HUD will be dismissed without prejudice, and Cunningham will be granted leave to amend these claims.  Cunningham's Motion for Summary Judgment will denied without prejudice as premature.

BY THE COURT:

/s/ Chad F. Kenney

**CHAD F. KENNEY, J.**